UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| VERSUS | NO.  01-239 |
| CRAIG LEE BROWN | SECTION  "N" |

## ORDER AND REASONS

Before the Court is the motion of Craig Lee Brown, filed pursuant to 28 U.S.C. § 2255, to

Vacate, Set Aside, or Correct Sentence.  The government has filed an opposition.  Moreover, the

Court is in receipt of Mr. Brown's letter dated January 12, 2006, wherein he advises, *inter alia,* of

his inability to make restitution payments pursuant to the monthly schedule.

## STATEMENT OF FACTS

Defendant Craig Lee Brown was indicted for conspiracy to commit mail fraud in violation

of 18 U.S.C. § 371 (Count 1), mail fraud in violation of 18 U.S.C. § 1341, aiding and abetting in

mail fraud, in violation of 18 U.S.C. § 2 (Counts 2-34), and conspiracy to commit money laundering

in violation of 18 U.S.C. § 1956(h) (Count 35) by a federal grand jury in the Eastern District of

Louisiana.  A superseding indictment was returned on October 5, 2001, re-alleging the same

violations.  On May 17, 2002, a second superseding indictment was returned, containing the same

allegations as well as charging an additional conspiracy count (Count 36), and adding a charge for

tax evasion in violation of 26 U.S.C. § 7201 (Count 39).  Brown entered a guilty plea on December

19, 2002, which was reduced to a written plea agreement in response to a one count superseding bill

of information (Rec. Doc. 161) charging conspiracy to commit mail fraud and to impede and impair

the lawful government functions of the Internal Revenue Service, in violation of 18 U.S.C. § 371.

Brown's plea agreement contained a waiver of his right to appeal his sentence or to seek collateral

relief.[1]

Of importance for purposes of this motion, Brown affirmed under oath that he had enough

time to discuss the case with his attorney and was very satisfied with the services of his legal

counsel, Attorney Milton Masinter.  The Court, finding that the plea was knowledgeable, voluntary,

and had a basis in fact containing all the elements of the crime, accepted the plea and ordered a pre-

sentence investigation.

The pre-sentence investigation report assigned a base offense level of six, increased by 17

for specific offense characteristics, with a reduction of three for acceptance of responsibility.  Thus,

the applicable guideline range was 33 to 41 months.  Brown was sentenced on June 9, 2003, at

which time he raised an objection to the two level increase for the sophisticated means of

committing the offense, arguing that his role in the crime was not substantial.  Brown was sentenced

---

[1]The only grounds upon which Brown could seek such relief, pursuant to the agreement, was if his sentence exceeded the statutory maximum or constituted an upward departure from the applicable guideline range.  At the rearraignment, Brown affirmed his understanding of the charge in the superseding bill, and likewise acknowledged the maximum sentence of five years imprisonment.  The Court explained the charge to Brown, including the elements of the offense, in response to which Brown acknowledged under oath that he had read and understood the charges against him in the superseding bill, and further acknowledged that he understood that by pleading guilty he waived his right to appeal except under the limited circumstances set forth therein, and also acknowledged his understanding of the maximum sentence which was possible.  The rearraignment transcript also sets forth Brown's acknowledgment of his illegal conduct in a six page factual basis, which he signed and admitted.

to 33 months incarceration with a three year term of supervised release; the fine was waived; restitution was ordered but the amount deferred until an appropriate amount could be determined, with input from the Probation Office and the U. S. Attorney's Office, as well as defense counsel.

On April 21, 2004, Brown timely filed his motion pursuant to § 2255 of Title 28.

## GROUNDS FOR THE RELIEF SOUGHT

In his petition, Brown generally alleges that his attorney, Milton Masinter, was ineffective for failure to conduct an adequate pre-trial investigation, including interviewing witnesses and discerning exculpatory evidence; failing to advise Brown of the time limits on an appeal; and his alleged failure to investigate and argue restitution issues. Accordingly, Brown contends that his guilty plea was not knowing and voluntary due to the ineffectiveness of his attorney, and also alleges that he was coerced by the government into signing his plea agreement, over and above his continued belief that he is not guilty of the crimes charged.

### A.     Waiver

As stated above, Brown waived his right to challenge his sentence in a post-conviction proceeding if his sentence was below the statutory maximum and within the statutory Guideline range. The Fifth Circuit has held that a waiver of post-conviction relief, such as relief provided by 28 U.S.C. § 2255, is valid if the waiver is informed and voluntary. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). The defendant must know that he had "a right to appeal his sentence and that he was giving up that right." *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994) (internal quotation marks and citation omitted), *cert. denied*, 513 U.S. 893 (2004). It is the responsibility of the district court "to insure that the defendant fully understands [his] right to appeal

3

and the consequences of waiving that right." *United States v. Gonzalez*, 259 F.3d 355, 357 (5th Cir. 2001) (quoting *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992)).

Here, the evidence indicates that Brown's waiver was both knowing and voluntary. The plea agreement, which was signed by Brown, contained an express waiver of his right to appeal or seek relief under § 2255 if his sentence was within the applicable guideline range and below the statutory maximum. During Brown's rearraignment, the Court summarized the indictment, reviewed the provisions of the plea agreement, and noted the minimum and maximum sentences under the statutes. The Court also advised Brown that the government would have to prove the charges against him beyond a reasonable doubt if he chose to go to trial. Brown indicated that he understood the ramifications of pleading guilty. Brown responded negatively when asked whether he had been influenced, induced or persuaded in any manner to plead guilty because of any promises or threats made to him by anyone. The Court specifically questioned Brown about his waiver of his right to appeal, and Brown confirmed that he knowingly waived his right to challenge his sentence. The Court determined on the record that Brown understood the nature of the rights that he was forfeiting.

Considering the foregoing, Brown affirmed that he fully understood and voluntarily approved of his plea. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621 (1977). At no time during the rearraignment hearing did Brown indicate that he did not understand the consequences of his actions. *See Wilkes*, 20 F.3d at 653. Additionally, Brown does not set forth any arguments in his motion that

4

would indicate that he did not understand the nature of his guilty plea.  The Court therefore finds

that Brown knowingly and voluntarily waived his right to pursue post-conviction relief under §

2255.

For the foregoing reasons, Brown's motion must be **DENIED**.

## THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE WITHOUT MERIT

### A.       Overview Of Applicable Law

A valid claim for ineffective assistance of counsel requires a petitioner to demonstrate both

prongs of the *Strickland v. Washington,* 466 U.S. 668 (1984), test.  Brown must show:  (1) his

counsel's performance was deficient; and (2) his counsel's deficient performance so prejudiced his

defense that the result of the trial would have been different in the absence of the deficient

performance.  *Id.* at 687-89.  If the Court finds Brown has made an insufficient showing at either

stage of inquiry, the Court may dispose of the claim.  *See id.* at 697.

A finding of ineffective assistance "requires showing that counsel's errors were so serious

as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687.  "The proper

standard for judging attorney performance is that of reasonably effective assistance, considering all

the circumstances."  *Id.*  "Judicial scrutiny of counsel's performance must be highly deferential.  It

is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse

sentence, and it is all too easy for a court, examining counsel's defense after it has proved

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Id.* at 689.

Accordingly, the Court engages in a "strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 690 (internal quotation marks omitted).

### B. Brown's Own Admissions, in Open Court and Under Oath, Establish His Guilt, Not Withstanding Any Alleged Shortcomings Of Counsel

Although Brown asserts in his § 2255 application that exculpatory evidence exists which would have demonstrated that he did not commit the crime alleged, his guilt was established and admitted by him personally and directly to the undersigned at his rearraignment on December 19, 2002. At that time, the Court questioned Mr. Brown regarding the elements of the crime to which he has pled guilty, and specifically the facts as set forth in the factual basis that Mr. Brown himself signed. The Court ensured that Brown understood all of the elements of the crime, including pertinent definitions of terms used in the statute, and also confirmed Mr. Brown's understanding of the factual basis which set forth the government's evidence. Mr. Brown clearly admitted under oath that he had committed those acts. Thus, regardless of what Mr. Masinter did or did not do pre-trial, Brown's actions are known and established before the Court.

Notwithstanding this overwhelming record, Brown claims he was coerced into entering the guilty plea. This coercion, according to Brown, was in the form of a threat by the government that Brown's wife of 32 years would be indicted and also incarcerated. Nonetheless, at the time of rearraignment, the Court questioned Mr. Brown as to any threats, commitments, or other adverse actions which caused him to plead guilty on that day, the existence of which Mr. Brown denied. The Court's questioning was very general, in order to include any type of activity which might place duress on Brown and create an issue as to the voluntariness of his plea. Having had the opportunity

to express himself in open court, unfiltered by the assertions of counsel, Brown affirmed that he was pleading guilty because he was, in fact, guilty of the crime charged, and not as a result of some commitment or threat against him.

With regard to exculpatory evidence which Mr. Masinter allegedly failed to investigate and follow up on, the Court notes that all such evidence was known to Mr. Brown at the time of his guilty plea.  For instance, the existence of witnesses, including insurance department officials in the state of Minnesota as well as friends and relatives who invested in the subject activities which formed the basis of the crimes charged, were known to Mr. Brown.  Thus, if he truly believed he was innocent, he would have maintained such belief notwithstanding Mr. Masinter's failure to contact or otherwise interview exculpatory witnesses.  The Court notes, in addition, that Mr. Brown was one of the last defendants to enter a guilty plea in this multi-defendant indictment, and thus the availability of cooperating defendants to the government in prosecuting this case made Brown's acquittal all the less likely, even had Mr. Masinter thoroughly exhausted the supply of exculpatory information which Mr. Brown now cites as evidence of his innocence.  And again, Mr. Brown, when questioned directly by the undersigned in open court under oath, admitted to his guilt and signed a factual basis in connection with such admission.

Mr. Brown further complains that his counsel failed to advise him of the time limit for filing an appeal.  First of all, this claim fails because, as part of his plea agreement, Brown waived any right to appeal any issue with the exception of a sentence which exceeded the statutory maximum, or one which exceeded the applicable guideline range, neither of which circumstance occurred in Brown's case.  Moreover, at the time of sentencing, this Court advised Mr. Brown that any appeal,

with very few exceptions, must be taken within 10 days after the judgment being entered in this case.

Thus, even if counsel failed to explicitly tell Mr. Brown the date for filing an appeal, the Court

advised Brown of the deadline.

Brown also raises issues with regard to restitution.  In essence, Brown claims that his

restitution obligation far exceeds the specific activities in which he was involved, and includes

restitution for individuals not known to him.  Nonetheless, the Court notes that Brown pled guilty

to a conspiracy in Count 1 of the superseding bill, and the Court further explained to Brown the

nature of a conspiracy charge, i.e. that his perceived limited involvement could well be sufficient

to make him part of the larger conspiracy:

> A "conspiracy" is an agreement between two or more persons to join together to accomplish some unlawful purpose.  It is a kind of "partnership in crime" in which each member becomes the agent of every other member.

> One may become a "member of a conspiracy" without knowing all of the details of the unlawful scheme or the identities of all the other alleged co-conspirators.  If a defendant understands the unlawful nature of the plan or scheme and knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict him for conspiracy even though that defendant had not participated before and played only a minor role.

> The government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme.  Similarly, the government need not prove that all of the details of the scheme alleged in the second superseding indictment were actually agreed upon or carried out.  Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.

Thus, Mr. Brown understood that, in pleading to the conspiracy, his involvement, limited though

it may have been, nonetheless made him part of the larger conspiracy.

Moreover, Brown's complaint about the restitution portion of his sentence has been waived, for the reasons stated above.  He was well aware, as evidenced in his plea agreement and on the record of his rearraignment, that restitution would be part and parcel of his sentence.  Brown's restitution order is based upon the information contained in the pre-sentence investigation report, and the compilation of data by the probation office in establishing a dollar figure of victim losses. Brown confirmed at his sentencing the victim impact and losses attributable to him of at least 500 investors to an amount exceeding $4 million.

Lastly, Brown suggests, in his January 12, 2006 letter, that he has now completed his term of incarceration, and, although working for an hourly wage, he cannot pay restitution in the amount as previously ordered by the Court.  Brown states: "I accept the responsibility of owing restitution. However, I ask that the Court lower its expectations to something within the scope of possibility. Perhaps a percentage of my income, whatever that may be, now or later, would be more suitable." The Court is willing to entertain an appropriate motion to re-fix a monthly restitution obligation owed by Mr. Brown.  Such adjustment, however, is not appropriately sought via § 2255.

## CONCLUSION

For the foregoing reasons, the application of defendant Craig Lee Brown pursuant to Title 28, U.S.C. § 2255, be and is hereby **DENIED**.

New Orleans, Louisiana, this 22nd day of September, 2006.

_____
**KURT D. ENGELHARDT**
**United States District Judge**

9